UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TERRELL JAMES ROBEY,<br><br>　　　　Plaintiff,<br><br>　　　　　v.<br><br>DAVIS, et al.,<br><br>　　　　Defendants. | CAUSE NO. 3:22-CV-71-JD-MGG |

OPINION AND ORDER

Terrell James Robey, a prisoner proceeding without a lawyer, filed a case-initiating document that the court construes as a complaint alleging Eighth Amendment violations under 42 U.S.C. § 1983. (ECF 1.) Under 28 U.S.C. § 1915A, the court must screen the complaint to determine whether it states a claim for relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must bear in mind that "[a] document filed pro se is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citation omitted).

Mr. Robey is currently incarcerated at Indiana State Prison ("ISP"). His handwritten filing is quite difficult to parse, but he describes a series of events beginning in September 2021, when he was incarcerated at Pendleton Correctional

Facility ("Pendleton"). He claims that he got into a verbal altercation with another inmate, a member of the Vice Lords, who accused him of being a snitch. After their conversation, he sent a message via a tablet to prison staff asking that he be moved immediately. A prison employee he identifies as "Counselor Davis" intercepted his message and told another inmate about it, also a Vice Lord, with whom she was allegedly having a romantic relationship. He claims Counselor Davis and another prison employee, whom he identifies as "Case Manager Sway," were engaging in unlawful trafficking at Pendleton. They allegedly told other inmates that Mr. Robey was a snitch and also revealed personal information about his gender identity disorder, which he claims put him at risk of being harassed and attacked by other inmates. He claims he was in fact harassed and threatened by other inmates, and was held in isolation at Pendleton for some period pending an emergency transfer to another facility. He complains about the conditions in the isolation unit at Pendleton, including that he had to sleep on the floor.

On October 5, 2021, he was transferred to ISP. He was originally put in the general population, but he claims other inmates began harassing him almost immediately, as rumors had spread from the other prison about him being a snitch. He claims he asked a number of times to be put in protective custody, but no one would listen to him. He claims he has tried to commit suicide by slashing his wrists several times. He claims that instead of providing him with assistance, prison staff wrote him up for "disfigurement" and other disciplinary infractions and transferred him to

segregation, where he remains at present. He believes himself to be in danger if he were to return to the general population.

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. This includes appropriate measures to address the risk of self-harm from suicide. *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted).

At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an

3

inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted). Additionally, a "prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).

Giving Mr. Robey the inferences to which he is entitled at this stage, he has alleged a serious medical need, namely, severe depression that has led him to make several suicide attempts. He names as a defendant Dr. Chico (first name unknown), who he identifies as the "psych" doctor at ISP. It can be discerned that Mr. Robey has been under Dr. Chico's care since arriving at ISP in October 2021. It is not clear exactly what treatment Dr. Chico has provided, but the complaint can be read to allege that the doctor has not provided effective treatment for Mr. Robey's depression, given that he has made a number of recent suicide attempts. He will be permitted to proceed past the pleading stage against Dr. Chico on a claim for damages.

His complaint can also be read to seek injunctive relief related to his ongoing need for care. Warden Ron Neal has both the authority and the responsibility to ensure that inmates at his facility are provided constitutionally adequate medical treatment as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, Mr. Robey will be allowed to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his ongoing need for mental health treatment.

The Eighth Amendment also imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard. As the Seventh Circuit has explained:

> To establish deliberate indifference on the part of the defendants sued individually, [plaintiff] needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger. [Plaintiff] testified during his deposition that he told officers twice . . . that he was afraid for his life and he wanted to be transferred off the tier. . . . In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the identities of those who threatened the inmate, nor state what the threats were. . . . This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (internal citations and footnote omitted). In addition, "negligence, gross negligence, or even recklessness as the

5

term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020).

Mr. Robey alleges that he is currently in danger at ISP because inmates there believe he is a snitch. It appears from the complaint that he made requests for protective custody to "Counselor Goodwin" (first name unknown), but his requests have not been granted. However, he does not provide sufficient factual content for the court to plausibly infer that this individual was aware of a substantial risk to Mr. Robey's safety from a particular inmate or inmates, and deliberately turned a blind eye to that risk.[1] *See Klebanowski*, 540 F.3d at 639-40. The mere fact that he was denied protective custody is not enough to state an Eighth Amendment claim. *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). He also names "Internal Intelligence" in connection with this claim, but this appears to be a department within the prison, not a "person" who can be held liable for a constitutional violation under 42 U.S.C. § 1983. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011).

Nevertheless, the complaint can also be read to allege that Mr. Robey is currently in need of protection from other inmates, and Warden Neal has both the authority and the responsibility to ensure that inmates at his facility are protected from harm as required by the Eighth Amendment. *See Gonzalez*, 663 F.3d at 315. Therefore, Mr. Robey

---

[1] The portion of the complaint where Mr. Robey identifies the defendants is particularly difficult to decipher, and he appears to have mixed together a list of individuals he identifies as a "defendants" and those he identifies as "witnesses" to these events. The court has made its best effort to discern who he is seeking to hold liable.

will be allowed to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his ongoing need for protection from other inmates.

Mr. Robey also sues a number of staff at Pendleton over the events leading to his transfer to ISP and the conditions under which he was housed in Pendleton's isolation unit. These defendants are all located within the geographical boundaries of the Southern District of Indiana, and the events he describes occurred there. The court finds that these claims are not sufficiently related to his claims that he is in need of medical care and protection at ISP to proceed in the same lawsuit. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). It would be particularly inappropriate to try to litigate these discrete claims together given that Mr. Robey claims to have pressing issues at ISP that need to be addressed promptly. Therefore, his claims against the Pendleton defendants will be dismissed without prejudice to asserting them in a separate lawsuit in the Southern District of Indiana, should he choose to do so. The court offers no opinion about the merit of any potential claim he may have.

Finally, Mr. Robey's complaint can be read to seek preliminary injunctive relief related to his need to be placed in protective custody and his need for additional mental health treatment. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he

7

is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As to the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted). In light of these limitations, the court will order the Warden to respond to the request for preliminary injunctive relief before taking further action.

8

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Dr. Chico (first name unknown) in his personal capacity for monetary damages for failing to provide constitutionally adequate treatment for his severe depression from October 2021 to the present;

(2) DIRECTS the clerk to add Warden Ron Neal as a defendant;

(3) GRANTS the plaintiff leave to proceed against Warden Ron Neal in his official capacity for injunctive relief related to his ongoing need for constitutionally adequate medical care for his severe depression;

(4) GRANTS the plaintiff leave to proceed against Warden Ron Neal in his official capacity for injunctive relief related to his ongoing need for protection from other inmates;

(5) DISMISSES WITHOUT PREJUDICE the plaintiff's claims against Counselor Davis, Case Manager Swag, Officer Parrom, Ms. Bodkin, Rhonda Brennan, Kristine Conefers, and Mark Newkirk arising from events occurring at Pendleton Correctional Facility;

(6) DISMISSES Counselor Goodwin and Internal Intelligence as defendants;

(7) DISMISSES all other claims;

(8) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Ron Neal by email to the Indiana Department of Correction with a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(9) DIRECTS the clerk to fax or email a copy of the same documents to Warden Ron Neal at Indiana State Prison;

(10) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Chico (first name unknown) at Centurion Health and to send him a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(11) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(12) ORDERS Warden Ron Neal to file and serve a response to the plaintiff's request for a preliminary injunction no later than **March 14, 2022**, with supporting documentation and declarations from staff as necessary, addressing the status of the plaintiff's medical condition and his current need for protection from other inmates; and

(13) ORDERS Warden Ron Neal and Dr. Chico to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on January 25, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT