UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TERRELL JAMES ROBEY., <br><br> Plaintiff, <br><br> v. <br><br> CHICO, <br><br> Defendant. | CAUSE NO. 3:22-CV-71-JD |

OPINION AND ORDER

Terrell James Robey, a prisoner without a lawyer, is proceeding in this case against Dr. Christina Chico "for monetary damages for failing to provide constitutionally adequate treatment for [her][1] severe depression from October 2021 to the present[.]" ECF 3 at 9. Dr. Chico filed a motion for summary judgment. ECF 79. Robey filed a response, and Dr. Chico filed a reply. ECF 85, 88. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v.*

---

[1] This order reflects Robey's preferred pronouns of "she/her."

*Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Where the defendants have provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so

plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Dr. Chico provides an affidavit and Robey's medical records, which show the following facts: On September 24, 2021, while an inmate at the Pendleton Correctional Facility, Robey was placed on suicide watch after she was found with a t-shirt stuffed in her mouth and tied around her neck. ECF 79-2 at 16. On October 5, 2021, Robey was transferred to Indiana State Prison ("ISP") and entered into Dr. Chico's care for mental health treatment. ECF 79-1 at 2; ECF 79-2 at 1-15. During an initial intake performed by a nurse, Robey denied thoughts of suicidal ideation and was determined to be free of mental illness. ECF 79-2 at 9, 14.

On October 11, 2021, Dr. Chico met with Robey for a two-week suicide monitoring visit. ECF 79-1 at 2-3; ECF 79-2 at 16-17. During this assessment, Robey denied any suicidal ideation, but indicated she identified as non-gender conforming and relayed incidents of harassment related to her identification as a member of the LGBTQ+ community. *Id.* According to Robey, she informed Dr. Chico during this visit that she was experiencing depression, anxiety, and nightmares, and had previously attempted suicide. ECF 85-2 at 3-4. Dr. Chico concluded Robey did not present any mental health issues, but rather exhibited narcissistic personality disorder traits, noting she made physical threats to correctional staff and threatened lawsuits. ECF 79-1 at 3;

3

ECF 79-2 at 17. Dr. Chico informed Robey she would be seen in two weeks for a follow-up appointment. *Id.*

On October 22, 2021, Robey was placed in restrictive housing for refusing her general population housing. ECF 79-1 at 3; ECF 79-2 at 18-20. Robey's medical records indicate she met with a physician, denied any thoughts of suicidal ideation, and exhibited no signs of depression, anxiety, fear, or anger. *Id.*[2]

On October 25, 2021, Robey met with a member of mental health staff for her one-month suicide watch follow-up appointment. ECF 79-1 at 3; ECF 79-2 at 21-31. Robey reported feeling anxious and depressed due to insomnia and migraines, reported concerns regarding the facility and staff, and stated she wanted medications due to nightmares regarding her safety concerns. *Id.* Robey requested she be transferred to another facility and stated she was in "a tad bit of trouble," but would not explain what she was referring to. *Id.* It was determined Robey did not meet the criteria for a mental health diagnosis, and she was informed she would receive follow-up appointments. *Id.*

On November 18, 2021, Dr. Chico visited Robey at her cell for a review of her restrictive housing placement. ECF 79-1 at 4; ECF 79-2 at 32-33. Dr. Chico observed no visual signs that made her concerned for Robey's mental health at that time. *Id.*

On November 26, 2021, Robey presented to nursing staff with a self-inflicted cut to the right forearm and reported suicidal ideation. ECF 79-1 at 4; ECF 79-2 at 34-36. A nurse examined Robey and noted a "superficial injury to skin." *Id.* The affected area

---

[2] Robey disputes that she met with a physician or any member of medical staff on this occasion. ECF 85-2 at 5. But Robey does not dispute her medical records state she met with a physician and exhibited no symptoms.

4

was cleansed, dressing was applied, and further follow-up was referred to the mental health provider. *Id.* Nursing staff contacted Dr. Chico, and she placed Robey on suicide watch. *Id.*

On November 29, 2021, Dr. Chico met with Robey for suicide watch monitoring. ECF 79-1 at 5; ECF 79-2 at 44-50. Robey presented with a clinical risk factor of fearfulness regarding safety, and reported cutting because she was sexually harassed and threatened by two offenders and did not feel safe on the east side of the cellhouse. *Id.*[3] Robey informed Dr. Chico she would cut herself again if she was released from suicide watch and returned to the same cellhouse. *Id.* Dr. Chico informed Robey her behavior was not an appropriate way to get her needs met. *Id.* Dr. Chico determined Robey's risk of suicide was low and discontinued her suicide watch. *Id.* She also informed the Prison Rape Elimination Act (PREA) coordinator of Robey's safety concerns. *Id.*

Later that day, shortly after Robey was removed from suicide watch, she presented to nursing staff due to expressions of anger and suicidal ideation due to her housing assignment. ECF 79-1 at 5-6; ECF 79-2 at 51-52. Nursing staff reported Robey complained she was suicidal because the unit team would not move her housing unit. *Id.* Nursing staff contacted Dr. Chico, and she instructed nursing staff to return Robey to her housing unit to refrain from reinforcing her secondary gain seeking behaviors. *Id.*

---

[3] Dr. Chico recorded that Robey "admitted to cutting [herself] to control [her] housing and threatened to do it again if [she] is not moved." ECF 79-2 at 48. Robey disputes that she ever said her suicide attempt was due to housing concerns, and states she only threatened to commit suicide because she was depressed and suicidal. ECF 85-2 at 9.

5

Later that evening, Robey presented to nursing staff with complaints of cutting to her wrists and suicidal ideation. ECF 79-1 at 6; ECF 79-2 at 53-60. Nursing staff reported Robey had non-active bleeding to her wrists from cuts that "are all superficial." *Id.*[4] Nursing staff washed the wrists and applied iodine to the cuts. *Id.* Nursing staff reported the cuts to Dr. Chico and informed her Robey was acting overly dramatic throughout the course of treatment. *Id.* Dr. Chico indicated Robey was to return to her housing unit and not be seen by mental health staff in order to refrain from reinforcing her secondary gain seeking behaviors. *Id.*

On December 20, 2021, a mental health staff member met with Robey for a suicide risk screening in response to a healthcare request form. ECF 79-1 at 6-7; ECF 79-2 at 61-68. Robey reported feeling depressed and having nightmares but did not provide details, and expressed frustration with a desire to be on the west side housing rather than the east side. ECF 79-2 at 66.[5] The staff member encouraged Robey to discuss her housing concerns with the unit team rather than mental health staff. *Id.* Robey showed her forearms to the staff member, which did not have any visible markings, and indicated it had been twenty-one days since she had last harmed herself. *Id.* Robey indicated she was extremely upset with mental health staff and threatened legal action. *Id.* She then requested medication, but when the staff member discussed her current symptoms she responded "you have all the information needed, diagnose

---

[4] Robey responds that pictures of the cuts show they were more than "superficial." ECF 85-2 at 12; ECF 85-4 at 7. But Robey does not dispute that nursing staff informed Dr. Chico the cuts were superficial and described the cuts as superficial in her medical record.

[5] Robey disputes she discussed her housing concerns with the mental health staff member, stating she only discussed issues relating to her mental health. ECF 85-2 at 12.

6

me with that." *Id.* at 68. Based on her review of the December 20 treatment notes, Dr. Chico did not observe any mental health symptoms in Robey, but did observe antisocial traits. ECF 79-1 at 7. She believed Robey was attempting to use the encounter for secondary gain, namely a change in her housing unit. *Id.*

On January 13, 2022, Robey met with a psychologist for a behavioral health restrictive housing visit. ECF 79-1 at 7-8; ECF 79-2 at 69. The psychologist reported she was unable to assess Robey's mental status because Robey refused to speak or engage with her. ECF 79-2 at 69.[6]

On January 19, 2022, Robey met with a mental health staff member for her monthly restrictive housing monitoring appointment. ECF 79-1 at 8; ECF 79-2 at 70-74. Robey expressed grief due to the loss of her uncle and requested grief management materials. *Id.* She denied suicidal ideation. *Id.*

On February 14, 2022, Robey again met with a mental health staff member for her monthly restrictive housing monitoring appointment. ECF 79-1 at 8; ECF 79-2 at 75-77. Robey reported dealing with depression and was referred to Dr. Chico for follow-up. *Id.*

On February 23, 2022, Dr. Chico met with Robey. ECF 79-1 at 8-9; ECF 79-2 at 78-82. At this visit, Robey requested weekly mental health treatment sessions and medication for her depression. *Id.* Dr. Chico informed Robey weekly sessions are not typically offered to inmates and medication referral typically happens once a patient shows engagement in therapy. *Id.* Dr. Chico concluded Robey did not meet the criteria

---

[6] Robey disputes that she declined to speak with the psychologist on this occasion, stating she attempted to discuss her mental health concerns with the psychologist. ECF 85-2 at 12.

for any mental health diagnosis at that time, but rather exhibited histrionic and narcissistic personality disorder traits. *Id.* Although Robey requested medication and frequent mental health treatment, she was unable to state any specific goals or symptoms that would clinically warrant such interventions. *Id.*

Although Dr. Chico determined a medication referral was not clinically indicated, she nevertheless referred Robey's chart to the prison's psychiatrist, Dr. John Martin. ECF 79-1 at 9; ECF 79-2 at 83-84. On February 24, 2022, Dr. Martin reviewed Robey's chart for an assessment of medication management without psychotherapy. *Id.* Dr. Martin opined Robey did not have depression, mood swings, or psychosis, and there was sufficient evidence of a personality disorder with histrionic and narcissistic traits. *Id.* He noted Robey engaged in behavior that was alarming but not life threatening, and seemed to be aimed at achieving secondary gain. *Id.* Dr. Martin concluded there was no reason to put Robey on medication or refer her for psychiatric services, as she did not present with any signs or symptoms of depression despite prompts from mental health staff. ECF 79-1 at 10; ECF 79-2 at 84.

On March 2, 2022, Robey's medical records indicate she met with a member of mental health staff for a monthly restrictive housing unit appointment. ECF 79-1 at 10; ECF 79-2 at 85-86. The staff member reported Robey expressed she had been improperly diagnosed and requested medication, but did not provide a reason for why medication was needed. *Id.* Robey expressed a desire to speak with Dr. Chico, stating when she

8

spoke with her previously she "felt like Tony Soprano." *Id.*[7] Dr. Chico believed Robey's statements to the staff member demonstrated continued traits of histrionic and narcissistic personality disorder rather than depression or mental illness. *Id.*

On March 15, 2022, Robey was visited by mental health staff for a restrictive housing monitoring appointment. ECF 79-1 at 10-11; ECF 79-2 at 87-90. Robey did not report any mental health concerns or present any observable signs that indicated concern. *Id.* Following this visit, Robey was transferred from ISP to New Castle Correctional Facility, where she was no longer under Dr. Chico's care. *Id.*

Dr. Chico argues summary judgment is warranted in her favor because she reasonably concluded based on her experience and expertise that Robey did not present a serious risk of suicide or self-harm, but rather that her acts of self-harm were non-life-threatening attempts to achieve secondary gains. ECF 80 at 5-8. She argues the treatment she provided was designed to treat Robey's histrionic and narcissistic personality traits, not to punish or harm her. *Id.* In her response, Robey argues she regularly reported symptoms of depression, insomnia, nightmares, and suicidal ideation to Dr. Chico, and Dr. Chico was deliberately indifferent for failing to place her on suicide watch and provide her with regular therapy and medication. ECF 85-1.

Here, the undisputed facts show Dr. Chico's conclusion that Robey exhibited symptoms of histrionic and narcissistic personality traits rather than depression or suicidal ideation was a valid exercise of her professional judgment. Specifically, Robey's

---

[7] Robey disputes meeting with the mental health staff member on this occasion, stating this meeting never occurred and she never made these statements. ECF 85-2 at 14. But Robey does not dispute her medical records reflect this meeting occurred and she made these statements.

9

medical records contain numerous statements from Robey indicating she used mental health complaints and suicide threats to achieve secondary gain, namely a change in her housing situation. While Robey disputes making these statements, she does not dispute that medical staff regularly recorded these statements in her medical records, which were available to Dr. Chico. There is no evidence Dr. Chico had any reason to doubt the veracity of Robey's medical records or to believe medical staff were fabricating Robey's statements. While Robey asserts she regularly informed Dr. Chico and other mental health staff she was experiencing depression, having nightmares, and hearing voices, Dr. Chico was within her professional judgment to believe Robey exaggerated or fabricated these complaints for secondary gain. *See Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014) (prison officials are not expected to believe everything that a prisoner tells them); *see also Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) (prison staff is not deliberately indifferent for reasonably disbelieving a prisoner's assertion). Dr. Chico met with Robey on a number of occasions, and even referred her to the prison psychiatrist for a second opinion, before concluding she did not require any medication or regular treatment sessions and that providing these treatments would only reinforce negative behaviors. While Robey disagrees with the treatment provided by Dr. Chico, Dr. Chico has provided undisputed evidence this treatment was a valid exercise of her professional judgment. *See Ciarpaglini*, 352 F.3d at 331 (a mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation).

For these reasons, the court:

(1) GRANTS Dr. Chico's motion for summary judgment (ECF 79); and

(2) DIRECTS the clerk to enter judgment in favor of Dr. Chico and against Terrell James Robey and to close this case.

SO ORDERED on March 6, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT